52 So.2d 824

### UPTON v. STATE.

6 Div. 213.

Supreme Court of Alabama.

May 10, 1951.

Ross, Ross & Ross, of Bessemer, for appellant.

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., opposed.

FOSTER, Justice.

The question in this case is whether the alleged father of a bastard child has voluntarily assumed the role of parenthood so as to require him to support the child and be subject to the penalties of section 90, Title 34, Code, for willfully not doing so while she is still under eighteen years of age and in destitute or necessitous circumstances.

It is our understanding there is no common law duty on the part of the father of a bastard child to support it. Title 6 of our Code makes provision for such limited support, and for a long time in this State that was such a father's only duty.

The duty to make that limited support was settled by a compromise agreement which has been fully complied with. That statute did not subject the father of the child to the penalties of what is now section 90, Title 34, Code, for willfully refusing or failing to provide support for a bastard child. It was only by the addition of section 4479 to the Code of 1923, section 89, Title 34, Code of 1940, that such a father became subject to the penalties of section 90, supra.

We had occasion in the case of Law v. State, 238 Ala. 428, 191 So. 803, 805, to construe that additional statute as applicable to the requirements of section 90, supra. It provides that the word "parent" in section 90 shall include the father of a child born out of lawful wedlock. In construing that section we refused to permit the inquiry to be made in a prosecution under section 90, whether the defendant was in point of fact the father of the bastard child, but held that he was subject to the penalties of section 90 only when he "publicly acknowledged or treated the child as his own, in a manner to indicate his voluntary assumption of parenthood." Further observing, "But he must voluntarily assume the role of a parent or be so adjudged by a court with due authority. No formality should be necessary, but he should make his purpose known to the public." It is only by doing so that he assumes the duty to support a bastard child. We noted in the Law case, supra, from which that quotation is taken, that some states have statutes to the effect that such a public acknowledgment and assumption of parenthood has the effect of legitimatizing the child as that of the father so doing. We do not have in this State any such statute, but we adopted that feature of those cases in other states which prescribes the conditions necessary to such result by making them apply to sections 89 and 90, supra, for only thereby is there a duty to support. Section 90 cannot apply where there is no duty to support the child until she is eighteen years of age. So that under the provisions of that section of the Code if a person claimed to be the father of a bastard child has not been so adjudged by a court with due authority, he shall not be subject to the requirements of section 90, supra, unless he has so conducted himself as to come within the principles which we have quoted above. It is made clear in the Law case, supra, that it was not merely an acknowledgment of parenthood by the reputed father to make him come within the definition of "parent" under section 89 and be subject to the penalties of section 90, but we stressed the point that the acknowledgment or treatment must be of such nature and in such manner as to indicate his voluntary assumption of parenthood.

In applying those principles to the present situation, it is our feeling the Court of Appeals has not given due consideration to that feature of the rule laid down in the Law case, supra, which requires the acknowledgment to be in such manner and so publicly manifested as to indicate a voluntary assumption of parenthood. The Court of Appeals in that connection found as follows: "We hold in the case at bar that the evidence sustained the finding of the lower court in his conclusion that the appellant publicly acknowledged the fatherhood of the child in question." That is largely predicated upon the effect given an agreement between the defendant in this case and the mother of the child dated September 20, 1938 in connection with the bastardy proceeding begun by her under what is now Title 6 of our Code. The Court of Appeals properly held that the mother could make such an agreement. But the question is its effect upon the inquiry of whether the father thereby so publicly acknowledged, or treated the child as his own, as to indicate his voluntary assumption of parenthood, and thereby assumed the duty to support her. It may be that such contract is circumstantial evidence material to be considered upon that inquiry, but it is not alone sufficient. In the first place, it does not clearly acknowledge his parenthood. The provision of the contract in that respect is to assume an obligation to pay the sum of $300, payable in semi-monthly installments "after the said defendant, Willard Upton, has acknowledged the parenthood of said child."

596

There is no evidence that he thereafter made such acknowledgment. It is uncertain and ambiguous in its meaning as an acknowledgment of parenthood, although taking the contract as a whole it may be strongly circumstantial that it was so intended. But taken by itself, it does not show an intention to assume the duty to support the child until she is eighteen years of age. The opinion of the Court of Appeals does not set out any other evidence or declare that there was other evidence of any such acknowledgment by the father or anything else to indicate his voluntary assumption of parenthood.

This proceeding was begun March 25, 1950, which was some eleven or twelve years after the execution of the contract. The Court of Appeals finds that the defendant made the payments regularly until October 17, 1940, leaving fifty dollars then unpaid which he began to pay on September 20, 1948 and made the last payment February 14, 1950.

In the meantime the child has been in the custody of her maternal grandparents. Her mother has married and moved to another state and is not connected with this litigation. The evidence is silent as to anything having been done by the defendant for the child or as to its needs for eight years from October 1940 until September 1948. All that time she was living with her maternal grandparents. She has never been in the custody and care of the defendant who has never made any provision for her support, other than the contract which was in settlement of the bastardy proceeding. There has never been a judicial determination that he is her father.

The conclusion reached by the Court of Appeals, as we understand it, is based upon the contract in connection with the record of payments made by virtue of that contract. We do not see where any other evidence was introduced or appears in the case upon that question.

■ It is our judgment, as we have said before, that the Court of Appeals in its opinion seems to have lost sight of the necessity to find that the defendant publicly

acknowledged, or treated the child as his own, *in a manner to indicate his voluntary assumption of parenthood.* That last clause is emphatic, as indicated by its history, having been adopted from statutes making such requirement to support legitimization. We think that section 90, Title 34, Code, prescribes a penalty only when there is a breach of a legal duty to support the minor child under eighteen years of age. We do not think such a legal duty is here shown.

It is therefore unnecessary for us to enter into the question of whether or not the evidence sufficiently shows that the child was in destitute or necessitous circumstances or whether the defendant's conduct amounted to a willful neglect or refusal to provide for her support and maintenance..

Reversed and remanded to the Court of Appeals.

All the Justices concur.